**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| DALI WIRELESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-00012-RWS-RSP |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| AT&T CORP., AT&T COMMUNICATIONS | ) | |
| LLC, AT&T MOBILITY, AT&T MOBILITY | ) | |
| II LLC, AT&T SERVICES INC., ERICSSON | ) | |
| INC., TELEFONAKTIEBOLAGET LM | ) | |
| ERICSSON, COMMSCOPE HOLDING | ) | |
| COMPANY, INC., COMMSCOPE INC., and | ) | |
| COMMSCOPE TECHNOLOGIES LLC, | ) | |
| | | |
| Defendants. | | |

**DEFENDANTS' OPPOSED MOTION TO SEVER AND STAY PENDING FINAL**
**RESOLUTION OF SUPPLIER LAWSUITS**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    BACKGROUND AND PROCEDURAL HISTORY ..........................................................1

    A.    The Nature Of Dali's Allegations ...................................................................2

    B.    The Defendants And The Accused Products ...................................................3

II.    ARGUMENT AND CITATIONS TO AUTHORITY ....................................................4

    A.    Severance Of The Supplier Defendants Is Required To Remedy Misjoinder ........4

        1.    Legal Standard ....................................................................................5

        2.    Dali's Right To Relief Against The Supplier Defendants Does Not Arise Out Of The Same Transaction, Occurrence, Or Series Of Transactions ...........................................................................................5

    B.    The Court Should Sever And Stay The Case(s) Against AT&T ...........................7

        1.    Customer Suit Doctrine And Severance Under Rule 21.............................7

            a.    Legal Standard .......................................................................7

            b.    Dali's Claims Against AT&T Are Peripheral To Its Claims Against The Supplier Defendants:  AT&T Is A Mere End-User Of The Accused Instrumentalities And CommScope And Ericsson Are The "True Defendants" ...................................9

            c.    AT&T Agrees To Be Bound By The Court's Findings As To Infringement By The Supplier Defendants' Products and Invalidity Arguments Raised by the Supplier ..............................11

            d.    Dali's Infringement Allegations Are Limited To Products Supplied By CommScope And Ericsson Found in AT&T's Network.................................................................................12

        2.    The Traditional Factors Further Support A Stay Of Dali's Case Against AT&T .......................................................................................12

            a.    Dali Will Not Be Harmed Or Unduly Prejudiced By A Stay ........13

            b.    A Stay Will Simplify The Issues In This Case And Promote Judicial Economy..................................................................14

            c.    Discovery Has Only Just Begun And A Trial Date Is Over 13 Months Away ...................................................................15

III.    CONCLUSION.................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**

*Altair Instruments, Inc. v. Telebrands Corp.*, Case No. 2:19-cv-08967-SJO-JC, 2020 WL 1956516 (C.D. Cal. Mar. 31, 2020) .................................................................10

*Anderson v. Red River Waterway Commc'n*, 231 F.3d 211 (5th Cir. 2000)...................................7

*Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976 (Fed. Cir. 2022) ...........................................13

*CyWee Grp. Ltd. v. Huawei Device Co., Ltd.*, Case No. 2:17-cv-495-WCB, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018) .......................................................................... 8-9, 14

*In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012) .................................................................... 5-6

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, Case No. 2:15-v-1202-WCB, 2016 U.S. Dist. LEXIS 55205 (E.D. Tex. Apr. 26, 2016)...........................................7

*Fractus, S.A. v. AT&T Mobility LLC*, Case No. 2:18-cv-00135-JRG, 2019 WL 3253639 (E.D. Tex. July 19, 2019).........................................................................................12

*Glenayre Electronics, Inc. v. Jackson*, 443 F.3d 851 (Fed. Cir. 2006).........................................13

*In re Google Inc.*, 588 F. App'x 988 (Fed. Cir. 2014)................................................................9, 11

*Intel Corp. v. ULSI Sys. Tech. Inc.*, 995 F.2d 1566 (Fed. Cir. 1993)...........................................15

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) ............................................ 4, 8-9, 11

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ....................................................................................7

*LG Electronics Inc. v. Asustek Computers et al.*, 126 F. Supp. 2d. 414 (E.D. Va. 2000) .............................................................................................................................................15

*In re Nintendo of Am. Inc.*, 756 F.3d 1363 (Fed. Cir. 2014).......................................... 4, 7-9

*NVC Tech. LLC v. HTC Am., Inc.*, 2:13-cv-1058, 2015 WL 106911 (E.D. Tex. Mar. 11, 2015).................................................................................................................................14

*Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-cv-325-JRG, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016).........................................................................................7

*In re Papst Licensing. GmbH & Co. KG Litig.*, 767 F. Supp. 2d 1 (D.D.C. 2011) ..................8, 14

*Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U. S. 617 (2008) .......................................13

*RPost Holdings, Inc. v. DocuSign, Inc,* Case No. 2:12-cv-00683-JRG, 2019 WL 1982531 (E.D. Tex. Mar. 3, 2019).........................................................................................8, 11

*Shifferaw v. Emson USA*, No. 2:09-cv-54-TJW-CE, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ..................................................................................................... 9-10, 12, 14

*Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660 (E.D. Tex. 2005) ................................................................................................................................ 13

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349 (Fed. Cir. 2011) .............................................................................................................................. 7, 9, 14

*St. Lawrence Commc'ns LLC v. Apple*, No. 2:16-cv-82-JRG, 2017 WL 3712912 (E.D. Tex. July 12, 2017) ................................................................................................ 9, 12

*Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed. Cir. 1983) ....................................... 13

*Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 287 F. Supp. 3d 651 (E.D. Tex. 2018) ........................................................................................................................................ 6

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) ................................................................................................................ 9

*Tissue Anchor Innovations, LLC v. Fountain Valley Regional Hospital*, Case No. SACV 19-00791 JVS, 2019 WL 8219779 (C.D. Cal. Nov. 25, 2019) ..................................... 8

*Vantage Point Techn., Inc. v. Amazon.com, Inc.*, Case No. 2:13-cv-909-JRG (lead case), 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015) ..................................................................................................................................... 8

*Wapp Tech Ltd. P'ship v. Hewlett-Packard Enters.*, No. 4:18-CV-468-ALM, 2019 WL 3818761 (E.D. Tex. Aug. 14, 2019) (referring to *CyWee*, 2018 WL 4002776, at *4) ...................................................................................................................... 11

*WP Bangquet, LLC v. Target Corp.*, Case No. LA CV16-02082 JAK (JPRx), 2016 WL 9450448, at *6 (C.D. Cal. Dec. 15, 2016) .............................................................. 10

## Statutes

35 U.S.C. § 299 .................................................................................................................... 1, 5-6

35 U.S.C. § 299(a) ....................................................................................................................... 5

## Other Authorities

Fed. R. Civ. P. 20 ..................................................................................................................... 1, 5

Fed. R. Civ. P. 20(a)(2) ............................................................................................................... 5

Fed. R. Civ. P. 21 ............................................................................................................. 1, 7, 9, 13

Defendant AT&T[1] and its suppliers CommScope[2] and Ericsson[3] (collectively, "Defendants") move this Court for two independent, but related, forms of relief.

First, Defendants request that the Court sever this case into two separate cases, because CommScope and Ericsson (together, the "Supplier Defendants") are accused of infringement based upon their use of different products and, therefore, are misjoined in violation of Federal Rule of Civil Procedure 20 and 35 U.S.C. § 299. To resolve this misjoinder, this case should be severed into two actions: (1) AT&T and CommScope; and (2) AT&T and Ericsson.

Second, the case(s) against AT&T should be stayed pursuant to the customer-suit doctrine and/or Rule 21. AT&T is accused of direct infringement based on its "deploying, operating, maintaining, testing, and using" off-the-shelf products supplied by CommScope and Ericsson. Dkt. 1 ¶¶ 2-7. But Dali already is pursuing the exact same infringement case against the Supplier Defendants as named defendants, and the Supplier Defendants are the true defendants. Dali's patent infringement claims against AT&T are thus cumulative of, and peripheral to, Dali's claims against CommScope and Ericsson. Dali's case(s) against CommScope and Ericsson have the potential to resolve the major issues against AT&T. Accordingly, the Court should exercise its discretion to stay the case(s) against AT&T pending final resolution of all claims against the Supplier Defendants, thereby providing an economical and efficient alternative to proceeding with unnecessary, duplicative litigation.

## I.    BACKGROUND AND PROCEDURAL HISTORY

---

[1] "AT&T" is defined herein as Defendants AT&T Corp., AT&T Communications LLC, AT&T Mobility, AT&T Mobility II LLC, and AT&T Services Inc., collectively.

[2] "CommScope" is defined herein as Defendants CommScope Holding Company, Inc., CommScope Inc., and CommScope Technologies LLC, collectively.

[3] "Ericsson" is defined herein as Defendants Ericsson Inc. and Telefonaktiebolaget LM Ericsson, collectively.

**A.      The Nature Of Dali's Allegations**

This is a four patent case. Dali asserts three patents against AT&T and CommScope, and three patents against AT&T and Ericsson. All four patents relate to Distributed Antenna System ("DAS") technology. The four patents-in-suit are  U.S. Patent No. 8,682,338 (the "'338 patent"), U.S. Patent No. 9,197,358 (the "'358 patent"), U.S. Patent No. 11,026,232 (the "'232 patent"), and U.S. Patent No. 10,334,499 (the "'499 patent") (collectively referred to herein as the "Patents-in-Suit"). Each of Dali's infringement allegations are based on the Defendants' "deploying, operating, maintaining, testing, and using AT&T's LTE and 5G networks which include small cell wireless solutions" provided by CommScope and Ericsson. Dkt. 1 ¶¶ 2-7. Dali's infringement allegations as to each Defendant can be charted as follows:

|  | AT&T and CommScope | AT&T and Ericsson |
|---|---|---|
| '358 Patent | X (Count 1) |  |
| '338 Patent |  | X (Count 2) |
| '232 Patent | X (Count 3) | X (Count 4) |
| '499 Patent | X (Count 6) | X (Count 5) |

*See* Dkt. 1. Dali's Complaint contains six causes of action, summarized below:

| Count | Accused Party | Patent | Accused Equipment |
|---|---|---|---|
| 1 | AT&T and CommScope | '358 | CommScope's OneCell product |
| 2 | AT&T and Ericsson | '338 | Ericsson's Radio Dot System |
| 3 | AT&T and CommScope | '232 | CommScope's ION-E/ERA platform |
| 4 | AT&T and Ericsson | '232 | Ericsson's Radio Dot System |
| 5 | AT&T and Ericsson | '499 | Ericsson's Radio Dot System |
| 6 | AT&T and CommScope | '499 | CommScope's ION-E/ERA platform |

*See generally* Dkt. No. 1.

Dali served Defendants with its preliminary disclosures pursuant to P.R. 3-1 and 3-2. Declaration of John R. Gibson ("Gibson Decl.") ¶¶ 1-3 & Ex. 1-3 thereto. Those disclosures confirm that Dali's infringement case against AT&T is predicated entirely on the use of CommScope and Ericsson products in AT&T's network. As to AT&T and CommScope, Dali's

infringement allegations focus on the functionality and components allegedly found in CommScope's ION-E/ERA platform and CommScope's OneCell product. Gibson Decl. Exs. 1, 2 at Exs. D-F. As to AT&T and Ericsson, Dali's infringement allegations focus on the functionality and components allegedly found in Ericsson's Radio Dot System. Gibson Decl. Exs. 1 and 3 at Exs. A-C. Indeed, Dali's infringement contentions attach as charts Exhibits A-F, which are the same as served upon CommScope (Exs. D-F) and Ericsson (Exs. A-C). Gibson Decl. Exs. 1-3.

In each case, Dali predicates AT&T's alleged infringement on AT&T's use of equipment provided by the respective Supplier Defendants. *See id.; see also* Dkt. 1. There is no allegation in the Complaint that the Supplier Defendants are jointly or severally liable for any act of infringement with each other, nor is there any allegation across the two Supplier Defendants that they committed an act of infringement arising out of the same accused product or process. There are also no allegations that are unique to AT&T. For each asserted patent, each asserted claim is brought against AT&T and a Supplier Defendant, and all products that Dali identifies as an accused product with respect to AT&T are provided by a Supplier Defendant. There are no additional suppliers, additional patents, or additional claims that are implicated by Dali's allegations against AT&T beyond the patents and claims asserted against the Supplier Defendants.

### B.    The Defendants And The Accused Products

AT&T, CommScope, and Ericsson are each independent companies. *See* Dkt. Nos. 1, 32-36, 38, 49. CommScope and Ericsson are direct competitors and each design, develop, and manufacture (or otherwise procure) their own distinct subset of accused products. *See generally* Declaration of Paul K. Turner in Support of Motion to Sever and Stay ("AT&T Decl."); Declaration of Luigi Tarlazzi in Support of Motion to Sever and Stay ("CommScope Decl."); Declaration of Paul Walker in Support of Motion to Sever and Stay ("Ericsson Decl."). In other words, each of the accused products is proprietary to the Supplier Defendants and not sourced from

a common manufacturer. CommScope Decl. ¶ 3; Ericsson Decl. ¶ 7. AT&T does not design, develop, or manufacture any of the accused products. AT&T Decl. ¶ 3. There are no joint development agreements between CommScope and Ericsson relating to the accused products. CommScope Decl. ¶ 3; Ericsson Decl. ¶ 9. Each of the accused products is different, and there is no allegation by Dali that they are the same. *See generally* Dkt. No. 1. Dali does not make a "representative product" argument in its Infringement Contentions, but instead charts each of the patents against each accused product separately. *See* Gibson Decl. Exs. 1-3.

## II.    ARGUMENT AND CITATIONS TO AUTHORITY

Dali's claims against CommScope and Ericsson involve different products and are not part of the same transaction or occurrence. Accordingly, they are misjoined and the Court must sever the claims with each proceeding in their own case with separate jury trials. To provide for as many efficiencies as possible, CommScope and Ericsson do not oppose consolidation of the severed cases for pre-trial purposes, consistent with this Court's practice for related cases.

Regardless of whether the Court severs the cases, however, the case(s) against AT&T should be stayed. Deferring Dali's duplicative claims against AT&T until after the Court resolves Dali's infringement claims against CommScope and Ericsson would "facilitate [the] just, convenient, efficient, and less expensive determination." *In re Nintendo of Am. Inc.*, 756 F.3d 1363, 1365-66 (Fed. Cir. 2014). A stay would further eliminate an unnecessary burden on the Court and, at a minimum, would significantly streamline any issues that might remain against AT&T. Dali's duplicative and peripheral claims against AT&T, therefore, would resolve the major issues and should be stayed. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) ("[L]itigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.").

### A.    Severance Of The Supplier Defendants Is Required To Remedy Misjoinder

### 1.    Legal Standard

Joinder is proper where: (1) the claims against the defendants arise out of the "same transaction, occurrence, or series of transactions or occurrences," and (2) there is a "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2); *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012). "Claims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." *Id.* at 1359. "[J]oinder is not appropriate where different products or processes are involved." *Id.* "Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.*

Section 299 of Title 35 further governs joinder of parties in patent infringement actions. Section 299 allows for joinder of alleged infringers "only if":

> (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and

> (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a).

### 2.    Dali's Right To Relief Against The Supplier Defendants Does Not Arise Out Of The Same Transaction, Occurrence, Or Series Of Transactions

The Supplier Defendants are misjoined. Joinder is appropriate under Section 299 "only if-(1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences

relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process." 35 U.S.C. § 299.[4] Dali's infringement allegations against the Supplier Defendants are indisputably not based on the "same accused product or process."

The Supplier Defendants—CommScope and Ericsson—do not cooperate *with one another* in "planning, developing, testing, operating, and maintaining" the accused products in AT&T's LTE and 5G networks. AT&T Decl. ¶ 4; CommScope Decl. ¶ 3; Ericsson Decl. ¶ 10. Far from it, the Supplier Defendants are direct competitors with one another and go to great lengths to keep the proprietary technical details of their products from one another. CommScope Decl. ¶ 3; Ericsson Decl. ¶¶ 3-4. The Supplier Defendants independently developed the accused products. AT&T Decl. ¶ 3; CommScope Decl. ¶ 3; Ericsson Decl. ¶¶ 5-8. The accused products made and sold by the Supplier Defendants are different. *Id.* When the accused products from one Supplier Defendant is deployed in AT&T's network, it is not connected to and does not interact with the accused products from another Supplier Defendant. AT&T Decl. ¶ 4; CommScope Decl. ¶ 3; Ericsson Decl. ¶¶ 10-11. None of the Supplier Defendants planned, developed, tested, operate, or maintain the accused products with or in coordination with another of the Supplier Defendants. *Id*. Accordingly, joinder is improper. *In re EMC*, 677 F.3d at 1359 ("We agree that joinder is not appropriate where different products or processes are involved.").

Because CommScope and Ericsson are misjoined, they should be severed into separate cases, with separate trials. Nevertheless, to ensure that convenience and economy in administration is furthered, the Supplier Defendants do not object to their cases being consolidated for pretrial matters and, indeed, expect them to be, consistent with the Court's practice.

---

[4] No Supplier Defendant intervened in this case, meaning that Section 299 applies. *See Team Worldwide Corp. v. Wal-Mart Stores, Inc*., 287 F. Supp. 3d 651, 654-57 (E.D. Tex. 2018).

**B.    The Court Should Sever And Stay The Case(s) Against AT&T**

Regardless of whether the Court severs defendants into two separate cases, the Court should stay the case against AT&T until resolution of the claims against the Supplier Defendants.

**1.    Customer Suit Doctrine And Severance Under Rule 21**

**a.    Legal Standard**

A trial court has broad discretion to stay an action against a party to promote judicial economy. *Anderson v. Red River Waterway Commc'n*, 231 F.3d 211, 214 (5th Cir. 2000); *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). In patent cases, when a case is brought against a manufacturer and its customers, the action against the customers should be stayed until the manufacturer action is resolved to promote judicial economy. *In re Nintendo*, 756 F.3d 1363, 1365-66 (Fed. Cir. 2014). This is known as the "customer-suit exception."

The customer-suit exception "exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Id.* at 1365 (citation omitted). "[C]ourts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). "The customer-suit exception has also been applied in multi-defendant actions in which the manufacturer and retailers are defendants in the same case." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, Case No. 2:15-v-1202-WCB, 2016 U.S. Dist. LEXIS 55205, *5 (E.D. Tex. Apr. 26, 2016) (collecting cases); *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-cv-325-JRG, 2016 WL 9275395, at *5 (E.D. Tex. Oct. 19, 2016) (granting motion to sever and stay claims against reseller in same suit as manufacturer pursuant to customer-suit exception;

"PI is the 'true defendant' in the present suit and the burdens of trial should not be unnecessarily imposed upon its customer, Mouser.") (citing *Nintendo*, 756 F.3d at 1365); *see also Tissue Anchor Innovations, LLC v. Fountain Valley Regional Hospital*, Case No. SACV 19-00791 JVS (ADSx), 2019 WL 8219779, at *3 (C.D. Cal. Nov. 25, 2019) (same; collecting cases); *but see RPost Holdings, Inc. v. DocuSign, Inc.*, Case No. 2:12-cv-00683-JRG, 2019 WL 1982531, at *2 (E.D. Tex. Mar. 3, 2019) (holding that customer-suit exception did not strictly apply to "a single suit that encompasses both manufacturers and their customers," but nevertheless granting motion to sever and stay based upon party stipulations). Staying claims against a customer pending the outcome of a patentee's claims against a manufacturer allows the court to focus on "the party that controls the product's design, rather than … secondary parties such as customers." *In re Papst Licensing. GmbH & Co. KG Litig.*, 767 F. Supp. 2d 1, 10 (D.D.C. 2011); *Katz*, 909 F.2d at 1464 ("[L]itigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.").

Three factors are considered when determining whether the customer suit doctrine applies: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *CyWee Grp. Ltd. v. Huawei Device Co., Ltd.*, Case No. 2:17-cv-495-WCB, 2018 WL 4002776, at *5 (E.D. Tex. Aug. 22, 2018) (quoting *Vantage Point Techn., Inc. v. Amazon.com, Inc.*, Case No. 2:13-cv-909-JRG (lead case), 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015)). However, "the Court does not apply the factors in a mechanical or precise manner and instead adopts a flexible approach in order to assess whether judicial resources will be saved." *Id.* (internal quotations omitted). Indeed, the cases involving the manufacturers "need only have the potential to resolve

the 'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum*, 657 F.3d at 1358 (citing *Katz*, 909 F.2d at 1464). Courts should use a "flexible approach" to avoid wasteful expenditure of resources, and should therefore "stay[] proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014); *see also In re Nintendo*, 756 F.3d at 1365-66 (explaining that the customer-suit exception is "designed to facilitate just, convenient, efficient, and less expensive determination") (citations omitted). "The guiding principles … are efficiency and judicial economy." *CyWee*, 2018 WL 4002776, at *4 (citing *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006)).

Alternatively, even if the customer-suit exception does not strictly apply, pursuant to Federal Rule of Civil Procedure 21, "courts have developed a practice of severing and staying claims against customers pending resolution of the suit against the manufacturer." *St. Lawrence Commc'ns LLC v. Apple*, No. 2:16-cv-82-JRG, 2017 WL 3712912, at *1 (E.D. Tex. July 12, 2017) (holding that "SLC's claims against the Carrier Defendants are peripheral to those against Apple and that adjudication of the claims against Apple first will resolve major issues concerning the claims against the Carrier Defendants."). In such situations, the Court looks to similar factors as those supporting severance and stay pursuant to the customer-suit exception, *i.e.*, "(1) whether the remaining claims are peripheral to the severed claims, and (2) whether adjudication of the severed claims would potentially dispose of the remaining claims." *Id.* (quoting *Shifferaw v. Emson USA*, No. 2:09-cv-54-TJW-CE, 2010 WL 1064380, *1 (E.D. Tex. Mar. 18, 2010)).

> **b.  Dali's Claims Against AT&T Are Peripheral To Its Claims Against The Supplier Defendants:  AT&T Is A Mere End-User Of The Accused Instrumentalities And CommScope And Ericsson Are The "True Defendants"**

As shown above, Dali's infringement contentions make clear that AT&T is a mere end-

user of the Accused Instrumentalities supplied by CommScope and Ericsson. Each element of every asserted claim is alleged to be met solely by the operation of, and components found in, either the accused CommScope or Ericsson products. *See generally* Gibson Decl. Exs. 1-3. This is not surprising, given that AT&T itself does not design, develop, or manufacture any of the accused CommScope and Ericsson products. AT&T Decl. ¶ 3. For this reason, both CommScope and Ericsson have agreed to indemnify AT&T in this action, as set forth in the accompanying declarations. CommScope Decl. ¶ 5; Ericsson Decl. ¶ 12. These facts weigh in favor of a stay. *See Shifferaw*, 2010 WL 1064380, at *3 (finding "severance of the claims as to the primary party in interest in this lawsuit, Mishan, is warranted" and "that in the interest of justice, the claims in this court against the Retailer Defendants should be stayed pending resolution of the action against Mishan"); *see also Altair Instruments, Inc. v. Telebrands Corp.*, Case No. 2:19-cv-08967-SJO-JC, 2020 WL 1956516, at *3 (C.D. Cal. Mar. 31, 2020) (granting motion to sever and stay; "Telebrands has agreed to indemnify Walmart, and because Telebrands as the manufacturer is the 'true defendant' in this case, which is in its early stages, the Court finds judicial economy warrants a stay."); *WP Bangquet, LLC v. Target Corp.*, Case No. LA CV16-02082 JAK (JPRx), 2016 WL 9450448, at *6 (C.D. Cal. Dec. 15, 2016) (granting motion to sever and stay; "This outcome is also supported by PDG's agreement to indemnify Target."). In contrast, Dali has not presented any allegations, "nor does [it] even argue, that [AT&T] had any role in the design or manufacture of the accused products." *Shifferaw*, 2010 WL 1064380, at *3.

Moreover, the fact that Dali served ***identical*** infringement contentions upon (1) AT&T and CommScope, and (2) AT&T and Ericsson—each of which rely exclusively on the underlying functionalities provided by the accused CommScope and Ericsson products (*see generally* Gibson

Decl. Exs. 1-3)—"strongly suggests there will be substantial similarity involving the infringement and invalidity issues." *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014).

Finally, while AT&T does not believe that it possesses any relevant, non-cumulative information (*see* AT&T Decl. ¶¶ 5-7), AT&T agrees to cooperate in providing limited discovery in the Supplier Defendant case(s) should such discovery be relevant and non-cumulative. Under the proposed process, the Supplier Defendants would intermediate any discovery Dali seeks to serve on AT&T to avoid burdening AT&T with information the Supplier Defendants can provide instead, consistent with the judicially-recognized need for manufacturers to "protect [their] customers" "as a matter of . . . good business." *Katz*, 909 F.2d at 1464. This was approved in *RPost Holdings*, as a fact in favor of staying a case against a customer. 2019 WL 1982531, at *1.

This factor thus weighs heavily in favor of staying the secondary claims against AT&T.

      **c.**    **AT&T Agrees To Be Bound By The Court's Findings As To Infringement By The Supplier Defendants' Products and Invalidity Arguments Raised by the Supplier**

To the extent there are any remaining issues to be decided following the conclusion of Dali's cases against the Supplier Defendants, AT&T agrees to be bound by any infringement determination through final judgment (and all appeals) as to the products at issue in each of the severed Supplier Defendant case(s). An "agreement to be bound by an infringement determination in a separate suit, that will leave little left for the court to adjudicate in the current suit, weighs heavily in favor of staying the current suit." *Wapp Tech Ltd. P'ship v. Hewlett-Packard Enters.*, No. 4:18-CV-468-ALM, 2019 WL 3818761, at *4 (E.D. Tex. Aug. 14, 2019) (referring to *CyWee*, 2018 WL 4002776, at *4). Likewise, AT&T agrees to be bound by any invalidity determination through final judgment (and all appeals) as to any grounds actually adjudicated on the merits by the Court in the severed Supplier Defendant cases.

Thus, this factor weighs heavily in favor of a stay. *St. Lawrence*, 2017 WL 3712912, at *2

(relying upon carrier defendants' agreement to be bound by the invalidity and infringement rulings against the true defendant in granting motion to sever and stay case against carrier defendants); *Shifferaw*, 2010 WL 1064380, at *3 ("[T]he fact that the Retailer Defendants will stipulate that they will be bound by the rulings by the Southern District of New York court in the case against Mishan weighs heavily towards a finding that adjudication of the claims against Mishan would likely dispose of the rest of the case.").

        **d.**     **Dali's Infringement Allegations Are Limited To Products Supplied By CommScope And Ericsson Found in AT&T's Network**

Dali has expressly defined the accused instrumentalities to be the specific platforms provided by CommScope and Ericsson as found in AT&T's network. *See* Dkt. 1 (Complaint); Gibson Decl. Exs. 1-3. Indeed, each count in the Complaint is predicated on infringement by AT&T via its use of one of the Supplier Defendants's products. This contrasts with those cases where other manufacturers are alleged to supply AT&T with any portion of the accused instrumentalities. *Compare with Fractus, S.A. v. AT&T Mobility LLC*, Case No. 2:18-cv-00135-JRG (lead case), 2019 WL 3253639 (E.D. Tex. July 19, 2019) (denying motion to sever and stay claims against customer because customer was sued for infringement based upon accused products purchased from multiple unrelated manufacturers and many of those manufacturers were not involved in the case). Resolution of Dali's claims against the Supplier Defendants will resolve all of Dali's claims against AT&T. This factor, too, weighs in favor of staying the AT&T case.

Because each of the factors weighs in favor of a stay, Defendants respectfully request that the Court stay the case(s) against AT&T in favor of Dali's cases against the Supplier Defendants.

        **2.**     **The Traditional Factors Further Support A Stay Of Dali's Case Against AT&T**

Because each of the factors related to the customer-suit exception and Rule 21 severance

weigh heavily in favor of a stay, the Court need not address the traditional factors, but to the extent it chooses to do so for the sake of completeness, each of these factors also weigh in favor of a stay. The traditional stay factors are "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).

### a. Dali Will Not Be Harmed Or Unduly Prejudiced By A Stay

Dali will not suffer any prejudice by a stay. Dali claims AT&T will be mostly, if not fully, resolved by resolution of the same claims against CommScope and Ericsson.

Moreover, Dali also cannot seek to recover twice—that is, Dali cannot collect once from CommScope and Ericsson and again from their downstream customer (*i.e.*, AT&T). *See, e.g., Glenayre Electronics, Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) ("[A] party is precluded from suing to collect damages for direct infringement by a buyer and user of a product when actual damages covering that very use have already been collected from the maker and seller of that product."); *see also Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 994 (Fed. Cir. 2022) ("As we previously held, 'a reasonable royalty is not to be separately calculated against each successive infringer. Once full recovery is obtained from one infringer with respect to a particular infringing device, at most nominal additional damages may be awarded against another with respect to the same device.'") (quoting *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed. Cir. 1983)). Accordingly, any recovery Dali may obtain from CommScope and Ericsson will exhaust the claims as to the downstream customer such as AT&T. *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U. S. 617, 629-631 (2008) (holding that "method patents were exhausted by the sale of an item that embodied the method" and that patentees cannot "extend their rights through each downstream purchaser all the way to the end user."). Alternatively, if one of the Supplier

13

Defendants prevails on any of its defenses, then Dali cannot recover damages from AT&T for that portion of its network, because all of Dali's infringement claims are tied to the same set of accused products that are being or will be fully litigated in the cases against the Supplier Defendants. *See Shifferaw*, 2010 WL 1064380, *3 ("If [the manufacturer] is not found liable, then [the plaintiff] has no claims against the [resellers]. If [the manufacturer] is found liable and [the plaintiff] collects damages from [the manufacturer], then the plaintiff cannot then in turn collect damages from the [resellers], because [the plaintiff] cannot receive a double recovery for the same sales."). To be sure, Dali has an inherent interest in the expeditious resolution, "but the interest in timely enforcement is 'present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion.'" *CyWee*, 2018 WL 4002776, at *3 (quoting *NVC Tech. LLC v. HTC Am., Inc.*, 2:13-cv-1058, 2015 WL 106911, *2 (E.D. Tex. Mar. 11, 2015).

As shown above, the claims against AT&T are secondary to those against AT&T's Suppliers and, therefore, Dali will not suffer any undue harm or prejudice if they are stayed pending the outcome of the cases against AT&T's Suppliers. This factor weighs in favor of a stay.

**b.      A Stay Will Simplify The Issues In This Case And Promote Judicial Economy**

It is indisputable that a stay will simplify the issues in this case. Courts universally acknowledge that staying claims against customers achieves "efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357. Staying Dali's claims against AT&T would allow the court to focus on parties with a greater understanding of "the product's design, rather than … secondary parties such as customers … ." *In re Papst Licensing*, 767 F. Supp. 2d at 10. There will be no need for the parties to conduct duplicative discovery of AT&T or for the Court to resolve unnecessary discovery disputes with AT&T that may never arise depending on the outcome of Dali's claims against CommScope and Ericsson. And, as discussed above, if Dali cannot obtain a ruling of

infringement against one or both of CommScope and Ericsson, or if the Supplier Defendants are successful in establishing the asserted patents are invalid, Dali's claims against AT&T will be moot. If Dali's does obtain a ruling of infringement against one or more of the Supplier Defendants, any damages it receives from the Supplier Defendants' as they relate to sales to AT&T will obviate the need for further infringement proceedings against AT&T. *See LG Electronics Inc. v. Asustek Computers et al.*, 126 F. Supp. 2d. 414, 423 (E.D. Va. 2000) ("If the court does find [the manufacturers] liable, and allows [plaintiff] to collect royalties from [the manufacturers], [the [plaintiff] cannot then in turn collect royalties from the entity to whom the infringer sells the product.") (citing *Intel Corp. v. ULSI Sys. Tech. Inc.*, 995 F.2d 1566, 1568-69 (Fed. Cir. 1993)). Resolution of the Supplier Defendants claims should resolve Dali's claims against AT&T.

Accordingly, there is simply no legitimate reason for Dali's duplicative and derivative claims against AT&T to proceed, and this factor weighs heavily in favor of a stay.

### c. Discovery Has Only Just Begun And A Trial Date Is Over 13 Months Away

Discovery in this case just commenced on August 26 with the exchange of initial and additional disclosures pursuant to paragraphs 1 & 3 of the Discovery Order. No discovery has yet been taken of AT&T. Trial is set for next year, on October 23, 2023. *See* Dkt. No. 60. The case is indisputably in its preliminary phase. Accordingly, this factor also weighs in favor of a stay.

Because all of the traditional factors weigh in favor of a stay, the Court should stay the case(s) against AT&T in favor of Dali's claims against CommScope and Ericsson.

## III.    CONCLUSION

In light of the foregoing, AT&T, CommScope, and Ericsson respectfully request that the Court sever the case into two cases: (1) AT&T and CommScope, and (2) AT&T and Ericsson, and stay the severed cases against AT&T.

Dated:  September 30, 2022                    Respectfully submitted,

                                              /s/ Eric H. Findlay
                                              Eric H. Findlay - Texas Bar No. 00789886
                                              Brian Craft - Texas Bar No. 04972020
                                              **FINDLAY CRAFT P.C.**
                                              102 N. College Avenue, Suite 900
                                              Tyler, TX 75702
                                              Telephone: (903) 534-1100
                                              Facsimile: (903) 534-1137
                                              Email: efindlay@findlaycraft.com
                                              Email: bcraft@findlaycraft.com

                                              Philip P. Caspers
                                              Email: pcaspers@carlsoncaspers.com
                                              Samuel A Hamer
                                              Email: shamer@carlsoncaspers.com
                                              William F Bullard
                                              Email: wbullard@carlsoncaspers.com
                                              Carlson Caspers Vandenburgh Lindquist &
                                              Schuman
                                              225 S. 6th Street, Suite 4200
                                              Minneapolis, MN 55402
                                              612-436-9600
                                              Fax: 612-436-9605

                                              **Attorneys for CommScope Defendants**

                                              /s/ Deron R. Dacus
                                              Deron R. Dacus (Bar No. 00790553)
                                              **THE DACUS FIRM, PC**
                                              821 ESE Loop 323, Suite 430
                                              Tyler, TX 75701
                                              Tel.: (903) 705-1117
                                              Fax: (903) 581-2543
                                              Email: ddacus@dacusfirm.com

                                              Matthew S. Yungwirth
                                              Email: msyungwirth@duanemorris.com
                                              John R. Gibson
                                              Email: jrgibson@duanemorris.com
                                              Glenn D. Richeson
                                              Email: gdricheson@duanemorris.com
                                              **DUANE MORRIS LLP**
                                              1075 Peachtree Street NE, Suite 1700
                                              Atlanta, GA 30309

Telephone: (404) 253-6900

**Attorneys for AT&T Defendants**

/s/ Deron R. Dacus
Deron R. Dacus (Bar No. 00790553)
**THE DACUS FIRM, PC**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel.: (903) 705-1117
Fax: (903) 581-2543
Email: ddacus@dacusfirm.com

Matthew S. Yungwirth
Email: msyungwirth@duanemorris.com
John R. Gibson
Email: jrgibson@duanemorris.com
Glenn D. Richeson
Email: gdricheson@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 1700
Atlanta, GA 30309
Telephone: (404) 253-6900

Joseph A. Powers
Email: japowers@duanemorris.com
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1842

Christopher J. Tyson
Email: cjtyson@duanemorris.com
**DUANE MORRIS LLP**
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone:  (202) 776 7851

**Attorneys for Ericsson Defendants**

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on September 30, 2022, a true and correct copy of the foregoing response was served on all counsel of record who have appeared in this case via the Court's CM/ECF system per Local Rule CV-5.

/s/ Eric H. Findlay
Eric H. Findlay

## CERTIFICATE OF CONFERENCE

This is to certify that counsel for Defendants have complied with the meet and confer requirement in Local Rule CV-7(h).  The personal conference required by Local Rule CV-7(h) was conducted on September 30, 2022. Plaintiff Dali Wireless, Inc. is opposed to the relief sought herein.

/s/ Brian Craft
Brian Craft